Case number 21-6067, USA v. Tywan Sykes. Argument not to exceed 15 minutes per side. Mr. Brown, you may proceed for the appellant. Morning. I'd like to reserve two minutes of my time for rebuttal. Please the court. My name is Mark Brown. I'm from Knoxville, Tennessee and I represent the appellate in this case, Mr. Tywan Sykes. I also represented him at the trial court level as well. I realize our time is limited here today. It's been a while since I've been here so if I'm a little jittery, just excuse me. We have five issues in our brief and I'll try and hone in on a couple of what I think are the important ones but I'm certainly, as your honors please, willing to discuss anything that we would have brought up in our brief. What's your strongest one? My strongest one, I believe, your honor, I actually have two that I believe are kind of coextensive. Number one would be the social media aspect of this case and the Facebook argument and number two would be the sentencing enhancement that Mr. Sykes received the extra ten years based on the two convictions, two prior Tennessee convictions. So those are kind of the ones I am sort of honing in here on but again I'm happy to talk about anything that your honors would like to talk about. On the Facebook argument, I noticed you didn't cite our Miller decision. Correct. What's your best argument for why that is not controlling here? I appreciate your honor asking that because I did review the Miller decision just last night. I took a look at it and I noticed some reluctance totally to determine that the National Center for Missing and Exploited Children is actually a governmental entity like the Tenth Circuit did in Ackerman. I acknowledge that. There seems to be some reluctance but there also seems to be a reason for that and that is the argument that Facebook or these other social media providers are doing these things for their business purposes and that seems to be part of what was in the Miller case. Now the Miller case when we had this case was still a district court case and hadn't come here yet so that's probably why I just didn't cite it in there but I do acknowledge it's there. But the Miller case deals it says mostly with, I believe if I read here, it says we need not take a position, meaning the National Center for Missing and Exploited Children, even if the NCMEC were a government actor, these activities do not show that Google acted as an agent when engaging in specific hash value scanning at issue here. That case deals specifically with the hash value scanning. I'm not necessarily arguing the hash value scanning or the proprietary software that Facebook and the other ISPs use. What we're arguing here is that the reporting requirements, and I understand the statute says it's not really a reporting requirement for sure, it's not a mandatory search requirement. Correct. It's not a mandatory search requirement but as I mentioned in our brief, I think we're being a little bit naive if we don't assume that these guys are not actively monitoring for anything and everything because if you've ever... They may be but that doesn't turn them into a government actor. Well... Because they could be doing it for their own business purposes. I suppose one argument for distinguishing Miller is that Google presented an affidavit in that case on behalf of a Google agent saying, look we would be doing this for our own business purposes whether or not there was any reporting requirement because we don't want our technologies being used for criminal behavior, for deviant child pornography behavior. What's the evidence in this case about Facebook and why they monitor their systems for child pornography? In this case, Facebook did as part of the motion to suppress hearing that we had in the district court, they did submit a declaration of a Raquel, I can't remember her last name, but they did submit it and she does say in there that we're doing it for our own business purposes but I'd like to point out actually as part of that declaration was Exhibit B. And Exhibit B talks in terms of new technology to fight child exploitation and it's authored by their global head of safety and Exhibit B does say at the bottom here, just one paragraph, we have specially trained teams with backgrounds in law enforcement, online safety, analytics and forensic investigations which review content and report findings to the National Center for Missing and Exploited Children. They have put people with backgrounds in law enforcement so they obviously are aware of the reporting requirements, they obviously know they need to catch this stuff, yes for a business purpose, but also for the purposes of assisting the National Center for Missing and Exploited Children. Do you think if Kroger hired a retired police officer to be a security officer to prevent theft, that would turn Kroger into an agent of the government? It would not Kroger, I don't believe your honor, and the reason I would say that is because Kroger is not associated with what has been determined to be a governmental entity, meaning the National Center for Missing and Exploited Children. Facebook, what if Kroger has some type of relationship with the police where they will have a speed dial whenever they find a shoplifter, would that matter then? I don't think that that would again turn Kroger into a government agent at that point. I don't think they don't have for example, and again there is a mandatory reporting requirement, they don't necessarily have to call the police if they find a shoplifter at Kroger. They can handle it themselves if they wanted to, but Facebook is a different all different together entity and like I said if you don't think they're monitoring things, log on to it and say for example you look at the Facebook page for the Cincinnati Bengals, you'll get an email about ten minutes later and you'll get an email that says would you like to buy Bengals tickets? That tells you these guys have some sort of technology, proprietary or whatever, to monitor this. The fines for not reporting these violations are probably a drop in the bucket to Facebook. A fine of $150,000 is $300,000 beyond that, so it's probably a drop in the bucket. Nonetheless, I understand the argument that you want to protect your business purposes. I get that, but it's co-extensive here because you're finding this stuff and you're forwarding it to a governmental entity. That same argument was raised in Miller. I recognize that it makes the Kroger hypo-distinguishable, but I don't see how it makes Miller distinguishable because Miller clearly indicated that the statute requires the reporting, but according to the Facebook affidavit, it's for business-related purposes. I just don't see how Miller is distinguishable from this case. I would stand on what I just mentioned a few minutes ago, the fact that Facebook is not just saying we have business purposes, yes, but also Facebook is saying we have former law enforcement agents, whatever, looking for this stuff and giving it to the case came about. That's almost the entire case. Why does it matter that it's a former law enforcement person as opposed to just a regular IT person? I don't know that it matters necessarily, but what I'm... You just said that was the distinction. Correct. I was getting back to that, Your Honor. The reason it doesn't necessarily matter if it's an IT person or a law enforcement agent, it gives more credence to this stuff and sending it to the National Center for Missing and Exploited Children. That's what makes it... So if you have a valid business purpose to keep this stuff off of your platform, if you hire somebody that's better at it because they have a law enforcement background, that cuts against you than if you hire somebody that's not so good at it. That doesn't seem intuitively correct. Well, the issue here really is not necessarily who you hire. I know that's what it says, but let's say that's their policy regardless. We're looking at this stuff to send it on to the National Center for Missing and Exploited Children. So you can get an IT guy who's maybe not great at it, but also does it. I think it still is the same connection there. Yes, Your Honor. You said, okay, so let's say it is their business purpose and also they just feel as good corporate citizens they want to do it. So how does that make them a government agent? Only because once they find it, they report it or they have to report it? Yes, Your Honor. That's exactly the point here. It's because they are compelled to report it once they find it. And they are no doubt looking for it. They're not going to say that because who wants to say that? I wouldn't say it if I were them. I would rest on the business purposes. But they are actively looking for it. Well, that of course isn't the test in Miller. And you really don't talk about what the test is in Miller. So of the three different ways that Miller tells us you can become a government agent, which one are you relying upon? You have the compulsion test. I know what the three are. What are you relying upon? Really, it would be the compulsion test. Because you're compelled under the statute to mandatorily report your findings. But the statute goes out of its way to say you don't have a duty to search. The statute also says that. That's what Miller said. And true enough, that's exactly what the statute says. But again, these companies aren't unsophisticated. They can say we're doing it for our business purposes. I get that. And I understand you don't want your... But are you saying, it's not legal coercion in the traditional sense, as in a law requires them to do it. You're saying it's like subtle coercion? Correct. It would be something along that where you're compelled by the... Are there mandatory reporters for child abuse? Is everybody who's a mandatory reporter all of a sudden an agent of the state? The mandatory reporters meaning like teachers or things of that nature? Yeah. I mean, there's a school and it does whatever it does. Somehow or other there's a search involved. And then as a result, they discover something that they have to report. I'm understanding the distinction here. I see what you're saying. And I don't know that, and I can't speak specifically to what that is, because I don't know the ins and outs of it. But I would suspect in that situation there's probably just maybe a school board policy or something of that nature that requires them to report. I don't know that. I don't know if there's a statute that requires them to do it or not. We do know in this case there is a statute that says, if you find it, you must report it or you will face penalties. So I don't know the ins and outs of school boards and how they do things. But I would imagine it's probably more of a policy thing than it is an actual statute like we're dealing with here. So, mostly it is statutes. So, does that mean, I mean, your argument has a pretty far-reaching effect. The government coerces folks to do stuff all the time. I have to pay my taxes. Does that mean I'm a government agent? Well, no. Not at all, Your Honor. I'm just going to go to your second argument. Yeah, sure. I've only got about 40 seconds here, so I will quickly. I understand the argument with respect to the fact that federal law sweeps broadly, but I still think you have to look to Tennessee law for those enhancements. And Tennessee law, without question, defines sexual exploitation differently than it does the offenses of aggravated statutory rape or statutory rape. That's the biggest issue here. You still have to, why do we have a categorical approach? Why are we even looking at state law if we're just going to say anything at all that involves a child falls under this enhancement? I don't know why we have it. I see my time is up. Thank you, Your Honor. Good morning. May it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. As my friend indicated, this case involves several issues concerning suppression, sufficiency of the evidence, sentencing. I'm happy to answer any questions the Court has on any of the issues in this case, but given our limited time here today, I'd like to focus my presentation and discussion on the statutory sentencing enhancement issue because that involves a question of first impression concerning the scope of the two strikes provision in 18 U.S.C. 2251e. Now that sentencing enhancement provides enhanced penalties for individuals who have two prior convictions for a whole series of federal offenses which prohibit child pornography, sexual abuse of children, sex trafficking, a whole bunch of different things. Also in that category is people who have prior convictions under the laws of any state, quote, relating to the sexual exploitation of children. Now this Court, in many other cases, specifically Mateen, has considered what do you do when you have one of these enhancements in these statutes that refers to a non-traditionally defined offense. What the Court said in Mateen, what this Court has said in every other case, is what we do is we look to the plain meaning, the common understanding of that term. So the answer that the Court has to do, excuse me, the analysis the Court has to do is to look to what is the plain meaning of the term sexual exploitation of children. And as at least a couple other circuits have found, the plain meaning very clearly encompasses things beyond just the production of child pornography. What do you do? Would you distinguish the Ninth Circuit case that came out, I think, the other way from your position? Or would you just say that there's already a circuit split on this question, and we would just be entering one side of the split? We would acknowledge, frankly, there is a clear circuit split on this, and we are asking the Court to side on one side. And the reason we think the Court should reject the Ninth Circuit's approach is because if you look carefully at that opinion in Shopp, there's really three clear errors that the Court makes in its analysis. First and foremost, it placed undue reliance on the title of the statute. Secondly, it ignores other congressional uses of the term sexual exploitation of children. I'm trying to understand Congress's understanding of that term. And finally, it ignores that whole list of other federal offenses that are included in the 2251E enhancement. Now, starting with that undue reliance on the title of the statute, the Supreme Court has been very clear that the title of the statute cannot limit the plain meaning of the text. And the Supreme Court has said you shouldn't go look to the title of the statute to undercut the plain meaning of the text. The example that the Ninth Circuit gave in Shopp doesn't even support what it uses it for. It relies on the case of Esquivel-Quinonta, which interpreted a federal immigration provision. Again, another one of these things where we have a broad definition of a nontraditionally defined crime. And there, what the Supreme Court did is it first looked to the plain meaning of the term. And then, only after it had said the plain meaning indicates that, you know, in this particular context, the sexual abuse has to involve somebody who is under the age of 16. Only after it did that did it go and say, look to another statutory definition in federal law and say, yeah, and this supports our interpretation of that plain meaning. But the Court was also very clear that it was not going to take that federal definition and incorporate it whole cloth. Well, we're supposed to interpret the statute in context. And what should we make of the statutory amendment? I think it happened in 2006, I forget. It was after our first unpublished decision. What I find strange about that is, didn't both sections, or at least one of the two sections, have the same definition of children. But then, for the first part of the statute, they added this broad list. So, usually we're supposed to interpret the things to think that Congress intentionally changed one and kept one the same. And I'm curious why they wouldn't have just used the same list for both the two prior conviction enhancement and the one prior conviction enhancement. Does the government have a position on why they would change one and not the other? Your Honor, I think there are several different reasons why Congress might have done that. First, it simply could have been inadvertence on the part of Congress that they forgot to change the statute has two enhancement provisions. They only changed the language of one. That's a possible interpretation. It's also possible that Congress just felt that the relating to sexual exploitation of children language was pretty broad and it wanted to keep it to prior conviction enhancement. Under that view, does that mean they were attempting to narrow the first one by listing the broad range? It's possible. It could cut either way. They were trying to expand the first one, so we should interpret the second one narrowly? I think the point is, we don't know what Congress was intending here. And I think the Fourth Circuit in Mills really pointed out, look, it could cut either way. We don't know what Congress was intending. And we can't really read much into that. And in doing statutory interpretation, when you're looking at the language of a statute, when it has been modified over time, we don't necessarily presume that just because Congress chose to modify some language, it meant to change the meaning of other language. And I think, if anything, when we look at Congressional amendments to statutes, what we're supposed to do is look at how have courts interpreted the prior language of the statute. And even prior to that 2006 amendment, you had two courts, the Eighth Circuit and the Constitution's language relating to the sexual exploitation of children as being quite broad and encompassing all of those things that were listed that Congress then specified in the first, when it amended the statute. And I think if Congress wanted to modify the understanding that the courts had already sort of, at that point, uniformly reached about the two prior conviction enhancement, they would have done so. And so we presume, you know, one way in which we do statutory interpretation is we look and we say, when Congress amends a statute and there's been a settled meaning of it and they haven't changed it, that's an indication that Congress meant for that settled meaning to stay in place. And so I think, if anything, we should look at this amendment as confirming that sexual exploitation of children means what it says. Now, if we're trying to understand what did Congress mean in that 2006 amendment, there are other clues in that act. The Adam Walsh Act includes other references to sexual exploitation of children, which the Ninth Circuit failed to consider. Particularly if you look at Section 704 of that act. This is the Adam Walsh child, the act that amended the statute. Section 704 of that act also provided additional prosecutorial resources for, quote, offenses relating to the sexual exploitation of children, a phrase that is nearly identical to this statutory phrase. And they specifically defined what those federal offenses were that relate to the sexual exploitation of children. They included offenses under Chapter 71, 109A, 109B, 110, 117, and 18 U.S.C. Section 1591. Those are things that definitely include child pornography offenses, but they also include sexual abuse offenses, trafficking offenses, all the same kinds of things that are, again, in that list of federal priors in the two prior conviction enhancement. And so I think that shows that what Congress was thinking when it talked about sexual exploitation of children is it was thinking broader than just child pornography offenses. It was thinking about sexual exploitation in the common understanding of it, which of course sexual exploitation happens in child pornography, but it also happens when there's active sexual abuse of children, when there's sex trafficking of children, when there is statutory rape. Those are all forms of sexual exploitation of children, and that's what Congress was concerned about. So we have that indication in Section 704, but I'd also encourage the Court to look at that section created another new offense in 18 U.S.C. Section 2252A, Subsection G. That offense is titled Child Exploitation Enterprise, and in that statute, that new statute that was, again, created by the Adam Walsh Act, Congress specifically listed a bunch of predicates that count for child exploitation enterprise, and a lot of those predicates are non-child pornography offenses. So that context of you looking at, you know, to the extent that we want to look outside just the language in 2251E, if we're trying to understand what did Congress mean when it was amending the statute, did it at the time it amended the statute, did it understand sexual exploitation of children to be that broad sense, the evidence we have indicates that that is in fact what Congress understood that language to mean. And so I think the, I mean, again, going back to statute interpretation, we start with the plain language of the text, and the ordinary understanding is quite a broad one, and all the evidence we have confirms that Congress meant for this statute to have that broad meaning. The bottom line here is if we followed what Mr. Brown wants us to do, we would basically have to say that statutory rape doesn't involve the sexual exploitation of children, right? That's correct. Which seems absurd when you say it. It does seem absurd, and it cuts against the very plain language of the statute, and unless we have an indication that Congress meant for that plain, that language to have a different meaning other than its plain meaning, we should follow the plain meaning. And I think we, but it's not just that we don't have a contrary indication that Congress thought it meant something different. All the indications we have indicate that Congress thought it meant what it said in using that plain language. Another problem with the Ninth Circuit's analysis is that it ignored, you know, that whole list of federal offenses. Remember, this statute provides enhanced penalties, not just for people with prior state convictions, but also people with prior federal convictions. And the canon of notio terra sosa says, look, when we're trying to interpret statutory language, we look at the company it keeps. In here, Congress provided a whole list of things that it thought would count as predicates. And as this Court and Sanchez recognized, it would seem really, really odd for Congress to say, all of these federal offenses, which include child pornography, they include sex trafficking, they include active sexual abuse, they include rape, all of those things count. But when we're looking at state offenses, no, no, no, we're only going to look at child pornography. How does the sort of, well, I'm not sure what the Tennessee statute says, but if you have a 19-year-old having, it requires a 10-year difference? For one of the statutes, yes. For the aggravated statutory rape, yes, that required a 10-year difference between the victim and the perpetrator. But you could have a 27-year-old and a 17-year-old? I believe so. I apologize, Your Honor, I don't have that language of the statute right in front of me at this moment. There may be an age limit on the victim. I don't recall. I think it's 13 to 18. I think it was 13 to 18. If the statute says something different, I don't want to concede away language. But if that statute says 13 to 18, yes, you could have a 27-year-old that would be statutory rape with a 17-year-old. We would submit that is sexual exploitation. I mean, in fact, what you see is, I mean, the reason why we have statutory rape offenses like that and we're concerned about that is precisely because of the situation you see in this kind of case, where you have somebody who is much older manipulating an individual who is much younger into doing sexual things that that person probably wouldn't otherwise do if they weren't being manipulated. And this is exactly why we have these kinds of statutes on the books, is to protect children from this kind of exploitation, from this kind of sexual exploitation. And these are precisely the kind of prior offenses that Congress was trying to get at when it used this broad phrase under the laws of any state relating to the sexual exploitation of children. And I think, you know, as this Court recognized in Sanchez, it would be extremely odd to interpret that state, that category of state offenses as being narrower than the broad category of federal offenses that Congress specifically laid out. And it doesn't make sense to reach that interpretation that, again, would be contrary to the plain meaning of the language, contrary to the structure of the statute, unless we have some very crystal clear indication from Congress that it meant something different. And we just simply don't. The – Well, just getting back to what Judge White was talking about, what if it was – we have to follow the categorical approach. Would your argument be the same if the statute covered a 19-year-old and an 18-year-old having a consensual relationship? I guess it has to be less than 18, 19, and a 17-year-old, excuse me. We do think that statutory rape offenses categorically involve sexual abuse. And, in fact, there's a recent Fourth Circuit case that we did not cite in our brief. I'm happy to provide the Court with a cite afterwards that actually specifically addressed Tennessee's statutory rape statute and addressed whether it counts as, you know, abusive sexual contact involving a minor or ward, one of the categories in the one prior conviction enhancement, and found that it did. And our position is that statutory rape does count as abusive sexual contact involving a minor or ward. It also counts as a form of sexual exploitation of a child. And that is the plain language that this Court has to apply. So what if you have, going back to that, let's say there's an outlier state, because I don't think most states do this, where you have a 19-year-old and a 17-year-old, and most states do not. And in terms of sex trafficking, the federal system does not regard that as a category of sex trafficking. Just because it's, would that be, I mean, you say it's categorically, and statutory rape is exploitation. So the person convicted, the 19-year-old falls into that category, even if the consensus is that we don't criminalize that? Your Honor, I see my time is up. May I respond to your question? The, let me clarify our position. Our position is not that sort of statutory rape per se, but that these particular statutory rape offenses, which do fall within the general consensus of what counts as statutory rape. I would say that if you have an outlier situation, you have a state that defines statutory rape in an unusual way that would allow for that factual scenario that you were talking about, that would be a harder call. The question would then be, does that offense fit within this plain language of sexual exploitation of children? That's not the issue that we have in this case, though. I'm not going to say that wouldn't be a hard issue. I think that would be a hard issue. We're not, but we're just looking at the statutory offenses we have here. And these statutory offenses required, in one case, a 10-year age difference, and in one case, at least a 4-year age difference. And in those situations, we would submit that that is sexual exploitation of children. That fits within the very common understanding of what we think of as statutory rape. That fits within the very common understanding of what we think of as exploiting children for sexual purposes. And for that reason, we would ask the court to affirm the sentence in this case and also affirm the defendant's convictions. Okay, thank you, counsel. Thank you.  Please, the court, your honor, I do have, actually, to help my friend, Mr. McLaren, out here, I do have the actual statutory, the language you were asking about. And it does say that statutory rape is category 1, victim is at least 13 but less than 15, defendant is 4 years but less than 10 years older. And then part 2, the victim is at least 15 but less than 18. And the defendant is 5 but less than 10 years older than the victim. Aggravated statutory rape includes a victim at least 13, less than 18, and the defendant is at least 10 years older than the victim. Is your position that this statute is any type of outlier across the country in terms of what kind of statutes are, what types of crimes qualify as statutory rape? You know, I don't know that it's an outlier. All I do know is that Congress could have put into this language in 2251E, they've got that laundry list in the first one, aggravated sexual abuse. They could have put that there in the second part. And they chose to just say sexual exploitation of children. And it does, I agree, your honor, it may sound absurd, but it's what Tennessee law has codified. They have put these crimes in different sections of the code, in fact, in different years. They were enacted. So, if we're going to look at categories, we have to kind of look at the way the state, again, conceding that federal is defined broadly, you still have to look at how Tennessee law and how the legislature decided to do it and I don't think any of us can jump in their minds or in any minds of any legislature, Congress, anywhere. And I want to thank you for your time and I would ask that you reverse Mr. Sykes' conviction and sentence. Thank you very much. Thank you, counsel. Thank you. The case is submitted. We appreciate your arguments.